## Toland Estate

*Justin G. Duryea* and *Duryea, Larzelere & Kuen,* for accountants.

*Leon H. Fox, Sr.* and *Fox and Fox,* for objector.

*Milton Jacobson,* p. p., guardian ad litem.

TAXIS, P. J., December 4, 1963.—Robert Toland died on December 10, 1954, leaving a will bearing the date of July 11, 1949, with codicils thereto bearing dates respectively March 14, 1951, May 14, 1952, and April 24, 1953, all duly probated on January 5, 1955. . . .

Certain administrative questions in this trust have arisen from the taking, by eminent domain, by the school district of Whitemarsh Township, Montgomery County, of 8.147 acres of real estate forming a part of the corpus of the trust. This account has been filed to resolve these questions. In addition, six objections to the trustees' account as stated have been filed by the commissioners of Fairmount Park, Philadelphia, who are a party in interest under a provision of testator's last will set forth in detail below.

Decedent died on December 10, 1954. The real estate in question is a portion of the premises which had been decedent's personal residence, and which continues as such for his widow. Her occupancy results from the

terms of decedent's will dated July 11, 1949, as modified by a codicil dated May 14, 1952. Item 15(a) reads as follows:

"To hold, keep and maintain my real estate at Valley Green and Church Roads, Whitemarsh, Montgomery County, Pennsylvania, known as 'Aubrey', consisting of my house and about thirty-six (36) acres of land appertaining thereto, including garage, barn, farmer's house and other outbuildings, and to permit my said wife, AUGUSTINE VAN WICKLE TOLAND, to occupy and use the same, or part thereof, with appurtenances, as her home, for and during the term of her natural life, or for as long as she may elect so to do, without any compensation whatsoever to my estate and without the necessity of giving any security therefor. My said residence or farm cottage shall not be sold by my Trustees so long as the same is occupied by my said wife pursuant to the foregoing provisions, without her written consent; but, upon obtaining such consent, or upon the death of my said wife, my Trustees shall transfer and convey the aforesaid real estate to such of the following as may desire to acquire the same for such public use, as a park or otherwise, as they may deem most suitable, preference being given in the order named: Commissioners of Fairmount Park; Montgomery County; St. Thomas Church, Whitemarsh Township. . . ."

In 1957, the School District of Whitemarsh Township undertook to acquire approximately eight acres of "Aubrey". The trustees and the widow declined to sell voluntarily, whereupon the district commenced declaratory judgment proceedings, by the final decree in which [1] the court of common pleas of this county affirmed the right of the district to take the land in question by eminent domain proceedings. Eight and four hundred seventeen one-thousandth acres of the property

---

[1] School District of Whitemarsh v. Morris Lloyd et al., Trustees, No. 142, February Term, 1959.

were so taken and, after jury of view proceedings, an award of $49,000 was made to the trustees.[2] The trustees contested the action for a declaratory judgment, and also took an active part in the jury of view proceedings resulting in the above award. Mrs. Toland still resides at "Aubrey", and has at no time consented to any sale.

A number of interrelated questions have arisen regarding the disposition of the proceeds of the award, and the matter of treating expenses incurred in the condemnation litigation. The petition for adjudication sets forth the following items of expense incurred in the said litigation as follows: H. J. and C. H. Dager, appraisal fee and witness fee, $350; Emlen and Company, appraisal fee and witness fee, $350; and Montgomery, McCracken, Walker and Rhoads, counsel fee and expenses re condemnation proceedings, $5,067.11.

In addition, accountants set forth certain other expenses involved in this proceeding, and request that they be approved by the court. These are the costs of filing the present account, $125.50; counsel fees thereon, $1000; the costs of filing a petition for the appointment of a guardian and trustee ad litem, $6; and also the fee of the latter, to be hereinafter awarded. The trustees contend that all of these costs should be charged against the condemnation award, rather than against the trust as a whole, and also request permission to combine the resulting net proceeds with the residuary trust for administrative purposes. . . .

Objection no. six reads as follows:

"6. The fee charged by counsel and others is excessive and in any event, should be charged, if chargeable at all, against the Residuary Estate other than the devise to the Fairmount Park Commissioners and the

---

[2] School District of Whitemarsh v. Morris Lloyd et al., Trustees, No. 62-2656.

sum of $49,000.00 derived from the condemnation of a portion of the devise."

The first problem raised by this objection is whether or not the Fairmount Park Commissioners have any present interest in the proceeds (whether they be gross or net) of the condemnation proceedings. The answer to this appears clear, as the language used by testator requires initially either the obtaining of Mrs. Toland's consent, or the occurrence of her death, before any rights which the commissioners of Fairmount Park might have can possibly arise. Neither has as yet occurred and it follows that neither the said commissioners nor any other of the organizations mentioned in item 15 (2) of testator's will have any present right or interest in the proceeds in question. As to the precise nature of any future interest here involved, the appellate courts have forbidden speculative decisions relating thereto, when there is no present need for them: Houston Estate, 371 Pa. 396 (1952).

Objection no. six, however, also contends in substance that the expenses of the condemnation litigation and also the various costs of filing and auditing this account, being essentially administrative expenses, should be charged against the residuary trust and not the condemnation award of $49,000. In the great majority of cases, administrative expenses benefit the entire estate or trust and are accordingly charged to it. Here, however, as pointed out in accountants' brief and in the report of the guardian and trustee ad litem, all of the expenses in question were incurred in order to maximize the benefit which the ultimate takers of this real estate will receive, or to resolve issues concerning the fund which represents the converted value of part of it. The remaindermen of testator's residuary trust are, generally, his issue, and are thus entirely different persons from the four organizations given interests in "Aubrey". It is axiomatic that one who claims equity

must do it himself, and that those who will benefit from this fund should bear the expenses of its creation. No matter who ultimately becomes owner of the fund, the latter result will be insured by charging all of the expenses of the litigation and of this accounting to the jury of view award of $49,000. Accordingly, objection no. six is dismissed.

As to the present disposition of the net fund as finally determined, the most practical solution appears to be that suggested by the trustees, which is to award such proceeds to them to be administered as a part of the residuary trust, under like terms. No objection is made to this procedure, and all possible rights of future takers will be preserved by the establishment of an arithmetical ratio of distribution between the net proceeds of the condemnation and the value of the balance of the residuary trust. Such ratio can be easily applied thereafter, should it sometime become necessary to separate the funds. . . .

*Order*

And now, December 4, 1963, this adjudication is confirmed nisi.